JESSE W. FENTON

*v.*

WILLIAM S. CROOK.

[Decided January 10th, 1918.]

1. Where a landlord owned three corners of the intersection of two streets, a covenant in a lease as to properties on the corner of such streets did not apply to a store adjoining such corner but on a different lot.

2. Where the right of a lessee to enforce a restrictive covenant is doubtful, this court will refuse to enforce it.

On bill, &c.

*Mr. Samuel Roessler,* for the complainant.

*Mr. William R. Codington,* for the defendant.

STEVENS, V. C.

The complainant, who is a grocer in Plainfield, seeks by injunction to restrain his landlord, Crook, from letting the store adjoining his own to James Butler, Inc., for the purposes of a grocery.

In January, 1916, Mr. Crook owned three parcels of land on three of the corners formed by the intersection of Berkman street and South avenue, Plainfield. On one of the corners he had (1) a corner building in which, on the first floor, he had himself carried on the grocery business. This floor he leased to complainant. (2) An adjoining shop, then used as a butcher shop. (3) A shop adjoining the butcher shop, used as a barber shop. Above these shops, on the second story, was a single apartment in which Crook and his family dwelt. Across Berkman street on the opposite corner Crook owned a number of contiguous shops or stores fronting on South avenue. On the third corner there was a dwelling-house twenty feet or more from Berkman street, and a store at least double that distance from South avenue. The immediate corner was unbuilt upon.

In this situation he sold his grocery business to complainant and leased to him for two years (with the privilege of five more) the premises in which the business had been carried on. The lease contained the following covenant:

"Said party of the first part, in consideration of the leasing of the above-mentioned premises hereby agrees not to let or sublet, rent or lease to any other person, persons, corporation or firm the other properties on the corner of Berkman street and South avenue, now owned by the said party of the first part, for a grocery business during the term of the within lease or renewal thereof."

In April, 1917, Crook leased the store adjoining complainant's—that up to that time had been used as a butcher shop—to James Butler, Inc., for the purpose of a grocery business. Thereupon complainant sought to enjoin him. The question is whether the letting was a breach of the covenant.

The complainant contends that the butcher shop is a property on the corner of Berkman street and South avenue, because it is part of a larger parcel, in the same ownership, which, as a whole, is situate on that corner.

It is obvious that the contention, if carried to its logical conclusion, would lead to an absurd result. If unity of ownership be the test, then houses in that ownership extending from the corner to the middle of the block would be corner properties. If Crook owned all the lots in the block, then every lot would be a property on the corner of Berkman street and South avenue. Continuity of title is, evidently, not the test. On a built-up block in the same ownership, I take it that adaptation and use must generally furnish the guide. The building on the corner may cover one or more city lots. If adapted to a particular use and leased for that use, it would be a corner property. But the contiguous buildings he might also own would not be. In the case in hand Crook leased the first floor of the corner building to Fenton. The shop adjoining was not locally situate on the corner. It was separated from it by the entire width of the store leased to Fenton. It consisted of a single story and did not touch the corner at any point. It is argued that it was property on the corner when leased, because Crook, having reserved to himself for his own occupancy the floor above, which extended over both shops, was thus possessed of a continuous property, part of which touched the corner. If, so the argument runs, he leased part of this whole he leased property on the corner. This again makes the test of what is property on a corner, continuity of ownership. Had the landlord leased to the Butler company the butcher shop and, in addition, the entire floor above, he would undoubtedly have violated his covenant, because he would then have leased property on the corner; but he did not. The use of the upper story and the use of the shop were and had always been distinct. What he leased was a shop which had never been a corner shop or used as part of a corner shop, and which at its nearest point was separated from the corner by a full city lot. Whether the property leased, touched or adjoined other property in the possession of the landlord, vertically or laterally, was a matter of no consequence.

The complainant argues further that the defendant owned a number of lots on or near each corner, and that it was the intention to group them together and to call each group property on the corner. The intention must be derived from the terms of the lease read in the light of the surrounding circumstances. The construction contended for would prevent defendant from renting any of his stores fronting on South avenue, on the opposite side of Berkman street, of which, as I have said, he had a number, though they stood at a considerable distance from the corner and would not, in ordinary parlance, be spoken of as corner properties. Had it been intended to restrain him to this extent, it seems to me that the draftsman of the lease would naturally have used the words: "All the property of William S. Crook on or near the corners of South avenue and Berkman street;" or, more explicitly, "within * * * feet from the corners." or similar words. Certainly, the expression "properties *on* the corner" does not, as applied to a built-up city block, very aptly describe buildings or stores at a distance therefrom and not connected in use with the corner lot or with the building upon it.

The lease is our guide to what the parties intended. It gave to Fenton the store premises described as 666 South avenue, and provided that Crook should not rent or lease the *other* properties on the corners to any other person or persons, for the business named. Fenton, by his lease, acquired *one* property on the corner, and Crook was not to lease the *other* properties on the corners. It was competition from corner shops that the parties had in view. No doubt had it occurred to Fenton that the butcher shop might, in the future, be let as a grocery, he might have asked to have the covenant enlarged, but, judging from the language of the lease itself, competition from this quarter was not thought of. At all events it was not, in unambiguous language, provided against. It is a well-established rule that in cases where the right of a complainant to enforce a restrictive covenant is doubtful, to doubt is to deny. "Courts of equity," says Mr. Justice Garrison, in *Fortesque* v. *Carroll, 76 N. J. Eq. 584,* "do not aid one man to restrict another in the uses to which

he may put his land unless the right to such aid is clear. * * * Restrictive covenants must not be vague or uncertain." Judged by this rule complainant's bill must be dismissed.